UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION

This document relates to:

*Watkins v. Nurture, LLC, et al.*,

Case No. 24-cv-2832 JSC

Case No. 24-md-03101-JSC

**ORDER RE PLAINTIFF'S SECOND MOTION TO REMAND**

Re: Dkt. No. 736

Pending before the Court is Plaintiff's motion to remand the *Watkins* matter. (Dkt. no. 736.) Prior to consolidation in this multidistrict litigation, Plaintiff moved to remand for lack of subject-matter jurisdiction based on assertions that Defendant Nurture LLC had not properly alleged its citizenship in the notice of removal. (*See* MDL Dkt. No. 736-1 at 9.[1]) Now, Plaintiff contends the Court lacks subject-matter jurisdiction because, at the time of removal, there was not complete diversity among the parties. Defendants oppose remand.

Having considered the parties' submissions, and with the benefit of oral argument on August 13, 2026, the Court **GRANTS** the motion to remand.

**DISCUSSION**

A defendant in a state court lawsuit may remove an action to federal court on the basis of federal question jurisdiction or diversity jurisdiction. 28 U.S.C. § 1441. "The 'strong presumption against removal jurisdiction means that the defendant always has the burden of

[1] *Watkins v. Nurture, LLC, et al.*, 24-cv-02832-JSC, is a member case within the broader multidistrict litigation. The Court refers to docket filings from the *Watkins* member case by using the notation: "Watkins Dkt. No." Citations to filings in the MDL docket are denoted as: "MDL Dkt. No."

establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Relevant here, "[w]hen an action is removed on the basis of diversity, the requisite diversity must exist at the time the action is removed to federal court." *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). However, "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Hunter*, 582 F.3d at 1043. "Joinder is fraudulent '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id*. (citation omitted) (alterations in original). In the instant case, Plaintiff initially filed his action in the Civil District Court for the Parish of Orleans. (Watkins Dkt. No. 1 at 1.) Defendants then removed the case to the District Court for the Eastern District of Louisiana. (*Id*.) At the time of removal, the complaint named a single non-diverse party—the Sewerage and Water Board of New Orleans ("SWB"). (*Id*. at 4.)

In the notice of removal, Defendants argued the SWB was fraudulently joined, and without moving to remand, Plaintiff voluntarily dismissed the SWB as a defendant. (*Id*. at 4-8; *see also* Watkins Dkt. No. 17 (notice of voluntary dismissal).) Though Plaintiff had not contested Defendants' assertion of fraudulent joinder in the four years since the litigation commenced, he now moves to remand, arguing the SWB was not fraudulently joined, and thus complete diversity did not exist at the time of removal. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Accordingly, the Court must presently address whether subject-matter jurisdiction exists in the *Watkins* case.

Here, Defendants fail to carry their burden as to fraudulent joinder, and so complete diversity did not exist at the time of removal. "Fraudulent joinder is established . . . if a defendant shows that an 'individual[ ] joined in the action cannot be liable on any theory.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). "But 'if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" *Id*.

(citation omitted). A defendant asserting fraudulent joinder bears a "heavy burden" given the "general presumption against [finding] fraudulent joinder." *Id.* (citation omitted) (alteration in original). The crux of Defendants' argument is the Louisiana Products Liability Act ("LPLA")—the basis of Plaintiff's original claim against the SWB—does not apply to a water utility entity because it is not a "manufacturer" under the Act. (MDL Dkt. No. 753-3 at 22-23.) Yet Defendants do not identify any Louisiana case holding as much. Whether the treated water provided by the SWB constitutes a "service" instead of a "product," or whether it places the water "into trade or commerce," are potentially nuanced questions—the answers to which are not obvious based on the LPLA's text or prior court interpretations. (*See id.*) Absent binding or even persuasive caselaw interpreting the LPLA as Defendants do, the Court cannot say the original *Watkins* complaint failed to state a cause of action against the SWB that was "obvious according to the settled rules of the state." *Hunter*, 582 F.3d at 1043.

Separately, Defendants argue the original complaint contained "no factual basis for Plaintiff's claim that SWB's water was a source of" certain contaminants that caused injury. (MDL Dkt. No. 753-3 at 24.) Because of the "speculative" nature of the allegations, Plaintiff could not have succeeded on his claim. (*Id.*) This is a Rule 12(b)(6) argument, not a basis for fraudulent joinder. As the Ninth Circuit noted in *Grancare*:

> If a plaintiff's complaint can withstand a Rule 12(b)(6) motion with respect to a particular defendant, it necessarily follows that the defendant has not been fraudulently joined. But the reverse is not true. If a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent inquiry does not end there. For example, the district court must consider, as it did in this case, whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend.

889 F.3d at 550. If confronted with an argument about the sufficiency of these factual allegations on a motion to dismiss, the Court would be required to consider whether amendment could cure the deficiencies in Plaintiff's claim. Here, Plaintiff may not have initially pled the level of contamination in the water, or that the water was the sole cause of his injury, but Plaintiff had noted he was awaiting test results on contaminants in the water. (Watkins Dkt. No. 1-2 at 20.) Under these circumstances, the Court would grant leave to amend, as Rule 15's liberal standard requires, because there is an indication Plaintiff could allege additional facts in support of his

claim. Accordingly, there is at least a "possibility" Plaintiff could have stated a claim, which is enough to overcome Defendants' assertions of fraudulent joinder. *Grancare*, 889 F.3d at 548.

At the hearing, Defendants raised additional arguments not presented in their opposition papers. To start, Defendants assert the lack of caselaw interpreting the LPLA to exclude suits against government entities poses no problem. Since Louisiana is a civil law jurisdiction, legal analysis begins from the civil code and does not rely on common law interpretation. Further, Defendants note that because the LPLA is the *exclusive* remedy for product liability claims, the existence of other causes of action against the SWB—based on the provision of water—would indicate the LPLA does not apply. Neither argument wins the day. As to the former point, nothing in the LPLA's text explicitly excludes entities like the SWB. As to the latter, no party has cited any case in which a plaintiff has brought a claim against the SWB—product liability or otherwise. These nuanced arguments may be appropriate for a motion to dismiss, but they do not constitute failure to state a claim that is "obvious." *Hunter*, 582 F.3d at 1043.

Otherwise, Defendants advance two additional arguments in opposition. Neither is persuasive. First, Defendants rely on *Caswell v. Olympic Pipeline Co.*, 484 F. App'x 151 (9th Cir. 2012), to argue Plaintiff admitted the SWB was fraudulently joined. In *Caswell*, the Ninth Circuit considered whether subject-matter jurisdiction existed in the district court based on a theory of fraudulent joinder. *Id*. at 153. The court construed the plaintiffs' "failure to object to the factual allegations in the notice of removal and their decision not to move for remand" as "an admission" that the non-diverse defendants had been fraudulently joined. *Id*. In the instant case, Defendants point to similarities with *Caswell*: 1) Defendants removed on a theory of fraudulent joinder, and 2) Plaintiff did not object, nor move to remand. Further, Defendants note Plaintiff here voluntarily dismissed the SWB and did not contest the fraudulent joinder assertions in the notice of removal for years. Per *Caswell*, Defendants contend Plaintiff has admitted the SWB was fraudulently joined. But the Court is not persuaded by this unpublished memorandum opinion. The Court is unaware of any binding authority holding a party's decision not to file a motion to remand must be considered an admission of fraudulent joinder. Moreover, the Court always retains an independent obligation to ensure subject-matter jurisdiction exists, irrespective of the parties' diligence in

raising any such issues. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."). To construe Plaintiff's silence in the face of the notice of removal as an admission of fraudulent joinder, which binds the Court in determining the existence of subject-matter jurisdiction, runs contrary to this obligation and implicitly adopts a rule that if parties simply wait long enough, subject-matter jurisdiction is satisfied. Further, *Caswell* was decided before *Grancare*, and the published authority *Caswell* cited held only that the failure to contest facts alleged on removal constitutes an admission of those facts. *See Schnabel v. Lui*, 302 F.3d 1023, 1032 (9th Cir. 2002). Here, Defendants argue the failure to move to remand is an admission of law—fraudulent joinder—rather than an admission of facts stated in the Notice of Removal, such as factual allegations supporting citizenship. Therefore, the Court declines to follow *Caswell*.

Turning to Defendants' second argument, they contend that even if there was not complete diversity at the time of removal, the subject-matter jurisdiction deficiency was subsequently cured by Plaintiff's voluntary dismissal of the SWB. In support of this argument, Defendants rely on *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996). There, the Supreme Court confronted the following scenario:

> The case was removed to a federal court at a time when, the Court of Appeals concluded, complete diversity of citizenship did not exist among the parties. Promptly after the removal, the plaintiff moved to remand the case to the state court, but the District Court denied that motion. Before trial of the case, however, all claims involving the nondiverse defendant were settled, and that defendant was dismissed as a party to the action. Complete diversity thereafter existed. The case proceeded to trial, jury verdict, and judgment for the removing defendant.

*Id*. at 64. Ultimately, the Court concluded, under those circumstances, it was sufficient that subject-matter jurisdiction existed at the time of judgment. Despite the valid procedural argument raised by the plaintiff, the Court held "considerations of finality, efficiency, and economy" won out. *Id*. at 75 ("Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), considerations of finality, efficiency, and economy become overwhelming."). Based on this

reasoning, Defendants argue the voluntary dismissal functions much like the settlement in *Caterpillar*, and complete diversity now exists. Not so. *Caterpillar's* animating principles were "finality, efficiency, and economy" because the case had been tried, and judgment had been entered. *Id*. Though this Court has invested significant resources in the resolution of issues in the *Watkins* case, there has been no trial nor entry of judgment. Accordingly, the questions of finality, efficiency, and economy are less pronounced than in *Caterpillar*. *See City of Oakland v. BP PLC*, 969 F.3d 895, 909-10 (9th Cir. 2020) (noting *Caterpillar* has only been applied when the district court has entered judgment after trial and years of litigation, or when the district court has entered summary judgment following extensive discovery).

Further, 28 U.S.C. § 1447(c) requires the Court to remand when there is a lack of subject-matter jurisdiction "at any time before final judgment." Reading *Caterpillar* in harmony with Section 1447, the Court understands the holding to apply to issues of incomplete diversity argued *on appeal*. *See, e.g.*, *Rudow v. Monsanto Co.*, No. C99-4700 TEH, 2001 WL 228163, at *2 (N.D. Cal. Mar. 1, 2001) (describing the *Caterpillar* standard as applying when "a reviewing court" considers defects at the time of removal); *Alta Gold Min. Co. v. Aero-Nautical Leasing Corp*., No. 3:13-CV-00311-RCJ, 2013 WL 5671170, at *3 (D. Nev. Oct. 15, 2013) ("The *Caterpillar* rule is a rule of finality the purpose of which is not served in the prejudgment context and the application of which in the prejudgment context would completely erase the statutory time limit to file a motion to remand."). So, when a lack of complete diversity at the time of removal becomes apparent to the Court prior to final judgment, dismissal of the non-diverse party cannot cure the jurisdictional defect. This interpretation comports with the Supreme Court's closing thoughts in *Caterpillar*:

> The procedural requirements for removal remain enforceable by the federal trial court judges to whom those requirements are directly addressed. Lewis' prediction that rejection of his petition will "encourag[e] state court defendants to remove cases improperly," rests on an assumption we do not indulge—that district courts generally will not comprehend, or will balk at applying, the rules on removal Congress has prescribed.

*Caterpillar*, 519 U.S. at 77 (internal citations omitted). Here, the Court will not balk at applying

United States District Court
Northern District of California

the rules of removal Congress has prescribed.[2]

## CONCLUSION

For these reasons, Plaintiff's motion to remand is **GRANTED**. Accordingly, all prior orders in this case are **VACATED**, and the case is remanded to the Civil District Court for the Parish of Orleans.

This Order disposes of Docket No. 736.

**IT IS SO ORDERED.**

Dated: August 19, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

[2] The Court need not, and does not, address the parties' arguments regarding Nurture LLC's citizenship allegations in the notice of removal as the motion may be resolved on the fraudulent joinder question alone.